## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

   v.

GLENCORE LTD.

             Defendant.

Docket No.: 3:22-CR-71(SVA)

## <u>GLENCORE LTD.'S SENTENCING MEMORANDUM</u>

On May 24, 2022, Glencore Ltd., ("Glencore" or the "Company") pled guilty in this Court to a single charge of conspiring to manipulate certain commodities prices between 2012 and August 2016.  At the same hearing, Glencore and the Department of Justice Criminal Division, Fraud Section and the United States Attorney's Office for the District of Connecticut (the "Government," the "Department," or "DOJ"), executed a plea agreement (the "Plea Agreement").  The Plea Agreement, which DOJ and the Company negotiated over a number of months beginning in late 2021, provides for a recommended sentence that includes a criminal fine of $341,221,682, forfeiture of $144,417,203, retention of an independent compliance monitor for three years, and five years of probation.  Glencore respectfully requests that the Court approve the Plea Agreement and impose the recommended sentence.

The Plea Agreement provides for a fine that is within the appropriate range outlined by the US Sentencing Guidelines (the "Guidelines" or the "USSG") and reflects partial cooperation

credit by the way of a reduced culpability score and a 5 percent reduction off the otherwise applicable fine.  The reduced culpability score and cooperation credit are warranted in light of Glencore's cooperation and remediation efforts and are consistent with the DOJ's Corporate Enforcement Policy, which aims to recognize and reward a corporate defendant's cooperation and timely and appropriate remediation.

Finally, the Plea agreement provides that both parties agree that there is no basis for restitution as the amount of loss resulting from the offense cannot be reasonably determined. Petróleos Mexicanos ("PEMEX") and PMI Comercio Internacional, S.A. de C.V. ("PMI") (collectively "PEMEX") previously indicated that they believed they are entitled to restitution under the Mandatory Victims Restitution Act ("MVRA").  On September 12, 2022, Glencore and PEMEX notified the Court that they had entered into a confidential settlement agreement resolving all PEMEX's claims to restitution arising from the facts stated in the Information, and accordingly, PEMEX will not be filing a claim for restitution.  At the time of filing, Glencore is not aware of any other claim for restitution.

Glencore requests that the Court approve the Plea Agreement and impose the recommended sentence.

## I.     Overview of the Plea Agreement

The Plea Agreement's proposed sentence is both substantial and fair.  It appropriately balances the seriousness of the offense with the Company's cooperation and remedial measures. Specifically, the proposed sentence includes, among other things:

- A criminal fine of $341,221,682

- A total forfeiture amount of $144,417,203

- The retention of an independent compliance monitor for three years, with the possibility of extension; and

- Five years of probation.

Glencore and the DOJ agreed that the base fine is $179,590,359, which represents the pecuniary gain to all co-conspirators from the offense.  The maximum fine that may be imposed under 19 USC §3571(d) is twice the gross pecuniary gain, totaling $359,180,718.

The Government and Glencore have agreed to the USSG calculation applicable in this case and to the legal and factual analysis that led to the agreed-upon criminal fine.  The Guideline calculations are set forth in Paragraph 20 of the Plea Agreement.  In calculating the criminal fine, the parties agreed that the appropriate offense level under USSG §2B1.1 is 34.  This was calculated by starting with a base level of 6, a 26-level enhancement because the gain was more than $150,000,000 (pursuant to USSG §2B1.1(b)(1)(N)), and a two-level enhancement because the offense conduct involved sophisticated means (pursuant to USSG §2B1.1(b)(10)).

Finally, Glencore and the Department agree the appropriate culpability score is 6.  This score was calculated by taking the base culpability score of 5 under USSG §8C2.5, adding a three-level enhancement under USSG §8C2.5(b)(3) because the organization has 200 or more employees and a high-level individual at the company participated in, condoned, or was willfully ignorant of the offense, and deducting two levels pursuant to USSG §8C2.5(g)(2) because Glencore cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct.  This calculation yields a fine range of $215,508,430 to $431,016,861, with a statutory maximum fine of $359,180,718 (twice the gross pecuniary gain).

After considering a number of factors as outlined in Paragraph 13 of the Plea Agreement, the Government determined that Glencore's fine amount should be in the top quartile of the applicable USSG fine range and should be based on the statutory maximum.  In light of Glencore's cooperation and affirmative acceptance of responsibility, the DOJ determined that Glencore's fine should be the statutory maximum reduced by 5 percent, for cooperation per the Corporate Enforcement Policy in the Department of Justice Manual ("JM") §9-47.120, resulting in a criminal fine of $341,221,682.

The proposed sentence also includes a criminal forfeiture of $144,417,203 in ill-gotten gains, a three-year compliance monitorship and five years of probation.  As the Court is aware, this Plea Agreement and proposed sentence are just one part of a suite of cross-border enforcement actions spanning three jurisdictions (the United States, the United Kingdom, and Brazil), and five separate resolutions.  As described in the Presentence Report, in coordination with this Plea Agreement the Company settled other charges with the Department's Foreign Corrupt Practices Act ("FCPA") Unit and the US Attorney's Office for the Southern District of New York, resolved a parallel civil investigation with the Commodities and Futures Trading Commission ("CFTC"),[1] and settled an administrative action with the Brazilian Ministerio Publico Federal, leading to a total payment of $1.06 billion, even before taking into account amounts to be paid when sentencing occurs in the UK proceedings.

## II.     The Corporate Enforcement Policy and Glencore's Cooperation

### A.     DOJ's Corporate Enforcement Policy

---

[1] Consistent with Glencore's acceptance of responsibility in the DOJ and non-U.S. investigations, it resolved the parallel CFTC investigation with a significant civil monetary penalty and disgorgement. .

The Company received a two-level reduction of the culpability score and a 5 percent discount of the otherwise applicable fine in recognition of its cooperation with the DOJ's investigation and as a consequence of its recognition and affirmative acceptance of its criminal conduct.  The 5 percent discount is consistent with the DOJ's Corporate Enforcement Policy, which is intended to reward the type of cooperation that occurred in this case.[2]  Companies rely on this published policy in providing crucial cooperation in these government investigations and the policy explicitly states that it is "is aimed at providing additional benefits to companies based on their corporate behavior once they learn of misconduct."[3]

The policy, which has been in place since April 2016 when it was introduced as a pilot program,[4] states that the DOJ will agree to seek a reduction in any fine up to 25 percent off the bottom of the Guidelines range for companies that (i) cooperate and (ii) timely and appropriately remediate.[5]  The policy describes a number of factors for the DOJ to consider in making its assessment of the Company's cooperation.

The Guidelines establish a sentencing range based on a defendant's criminal history and the nature of the offense and provide for the possibility of negotiated departures from the Guidelines.  In particular, when prosecutors enter into plea agreements with corporations, "any negotiated departures or recommended variances from the advisory Guidelines must be justifiable under the Guidelines or 18 U.S.C. § 3553 and must be disclosed to the sentencing

---

[2] Indeed, the Company believes that its cooperation warrants a higher discount, and the 5% in the Plea Agreement reflects the result of a negotiated resolution with the Government.

[3] 9-47.120 - FCPA Corporate Enforcement Policy, No. 1.

[4] Leslie R. Caldwell, Assistant Attorney General, Criminal Division Launches New FCPA Pilot Program, (Apr. 5, 2016), https://www.justice.gov/archives/opa/blog/criminal-division-launches-new-fcpa-pilot-program (last visited Aug. 24, 2022).

[5] 9-47.120 - FCPA Corporate Enforcement Policy, No. 2.

court" as outlined in the JM, Principles of Federal Prosecution of Business Organizations.[6]  The Guidelines state that a "defendant who has provided substantial assistance in the investigation or prosecution of another person who has committed an offense may be sentenced to a term of supervised release that is less than any minimum required by statute or the guidelines."  USSG § 5D1.2, Application Note 3 (citing 18 U.S.C. § 3553(e) ("Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.").

Although Department policy permits a substantial discount off the statutory minimum, the Company agreed to calculation of its fine on the basis of twice the pecuniary gain from the charged conduct, a much greater amount and the statutory maximum fine.  The Company's cooperation supports a discount from that statutory maximum fine.  Since the Department's Corporate Enforcement Policy was published in 2016, numerous corporations have received discounts off the Guideline range in their resolutions with the DOJ, including in the context of plea agreements.

In assessing a company's cooperation pursuant to the Corporate Enforcement Policy, the DOJ considers (i) disclosure on a timely basis of all facts relevant to the wrongdoing at issue, (ii) proactive cooperation, (iii) timely preservation, collection, and disclosure of relevant documents and information relating to their provenance, (iv) where requested and appropriate, de-confliction of witness interviews and other investigative steps that a company intends to take part of its investigation; and (v) where requested, making available for interviews by the DOJ those

---

[6] JM 9-28.1600, comment.

company officers and employees who possess relevant information.  With respect to remediation, the DOJ looks for (i) a demonstration of a thorough analysis of causes of underlying conduct (root cause analysis) and, where appropriate remediation to address the root causes, (ii) an implementation of an effective compliance program comprising the elements set out in the Corporate Enforcement Policy, (iii) appropriate discipline of employees, (iv) appropriate retention of business records and prohibiting the improper destruction or deletion of business records, and (v) any additional steps that demonstrate recognition of the seriousness of the company's misconduct.  Under the Corporate Enforcement Policy, the DOJ will recommend up to a 25 percent reduction off the bottom end of the Guideline range when a company fully cooperates and carries out remedial measures in a timely and appropriate manner (where a company brought the matter to DOJ's attention in the first instance, even greater downward departures from the Guidelines are available).[7]

Based on the facts and circumstances laid out in the Plea Agreement and the cooperation and remediation described in more detail below, the proposed 5 percent reduction to the otherwise applicable fine amount is appropriate.

### B.    Glencore's Cooperation and Remediation

As indicated in Paragraph 13(h) of the plea agreement Glencore has no prior criminal history and only a limited history of regulatory enforcement action.  In addition, Glencore cooperated with the DOJ's investigation, some of which is described in Paragraph 13(c) of the Plea Agreement.  The Company expeditiously produced voluminous sets of documents to avoid delaying the DOJ's investigations.  These productions included tens of thousands of documents,

---

[7] 9-47.120 - FCPA Corporate Enforcement Policy.

some of which were produced from foreign countries in a way that did not implicate foreign data privacy. The Company engaged a data consulting firm to analyze trading activity and authorized that firm to present its analysis to the DOJ. Glencore also provided the Government all relevant facts known to it, including information about the individuals involved in the conduct described in the Information.

As described in paragraph 47 of the Presentence Report, Glencore cooperated with the DOJ's investigation and pled guilty to the elements of the offense, acknowledging and accepting responsibility for its conduct. As it stated in its written submission to the Probation Office, Glencore has taken responsibility for the improper trading directed by former employee, Emilio Heredia, and is committed to fostering and maintaining a culture of integrity, transparency and compliance. Glencore terminated Mr. Heredia's employment and either terminated or disciplined every employee whom it understood was involved in or aware of the conduct described in the Information.

In addition to cooperating with the investigation and accepting responsibility, Glencore engaged in extensive remediation as described in paragraphs 59 through 61 of the Presentence Report. Prior to the charge and plea, Glencore analyzed the root cause of the conduct described in the Information. This analysis and complementary efforts to enhance overall compliance led to major investments in the compliance program aimed at avoiding any repeat occurrences. Since the beginning of the Department inquiry, Glencore has terminated and disciplined employees, implemented new policies surrounding market conduct, and made significant investments into monitoring and controls systems for trading activities in the Platts window. These efforts are part of a much broader enhancement of compliance at the Glencore Group that began in 2016.

8

In 2016, Glencore Ltd. employees were trained on US commodities regulations by external counsel, including the rules of exchanges on which Glencore transacted; areas where Glencore traders could minimize exposure to regulatory risks; and key areas of regulatory enforcement.  In 2017, as part of the Glencore Group's centralization of the compliance function in Switzerland, Group Compliance began to take a more active role in managing market conduct risks across the Company and instituted a Company-wide Market Conduct Policy, which prohibits insider dealing, unlawful disclosure of inside information, and market manipulation.  In December 2018, Group Compliance hired a dedicated Subject Matter Expert ("SME") to manage market conduct risk across all commodity departments, including oil.  The SME has worked to develop and enhance market conduct controls across the Company, including monitoring and surveillance.  In January 2020, as part of its overall enhancement efforts, Glencore began building out a team dedicated to Market Conduct Compliance for Oil and Gas and continued to add team members in 2021 and is continuing to develop and enhance its trade surveillance system.

### C.    The Proposed Sentence Is Appropriate and In Line with Precedent

Prior market conduct cases also support the proposed sentence and discount off the otherwise applicable fine under the Guidelines, as similarly- or worse-situated companies have frequently received greater discounts off the applicable Guidelines ranges.  Approving the proposed sentence and discount is in line with precedent and avoids unwarranted sentencing disparities with other similarly situated defendants pursuant to 18 U.S.C. § 3553(a)(6).

Recent market conduct cases have included similar and sometimes larger discounts than the Plea Agreement provides for in this case, including in cases alleging extensive misconduct. For example, recent DPAs resolving matters with JPMorgan Chase, Tower Research, and

Deutsche Bank each involved substantially larger discounts.  In the case of JPMorgan, this was true despite JPMorgan's having engaged in more pervasive misconduct than at issue in this proceeding and with JPMorgan's having a history of prior misconduct.  The misconduct in these DPAs also affected more significant global markets.  Specifically:

- The September 2020 JPMorgan DPA (which involved both commodities fraud and wire fraud charges) included a 12.5 percent discount off the bottom of the Sentencing Guidelines fine range.  The conduct at issue in the DPA occurred over eight years.  The resolution described two separate market manipulation schemes—the first involving tens of thousands of unlawful transactions in the precious metals futures market and the second involving thousands of trading episodes in the markets for US Treasury futures contracts and for US Treasury notes and bonds.[8]  The conduct involved the direct knowledge and participation of numerous employees across three continents, including at least seven managerial-level employees, managing and executive directors, vice presidents, and heads of desks supervising other traders.[9]  The DPA also referenced JPMorgan's prior criminal history, involving a guilty plea in 2015 for similar misconduct that entailed manipulative and deceptive trading practices in the foreign currency exchange spot market.[10]

- The Tower Research DPA included a 25 percent discount off the bottom of the Sentencing Guidelines fine range.  The resolution described a scheme involving three

---

[8] Deferred Prosecution Agreement ¶ 4(a), (h), *United States v. JPMorgan Chase & Co.* (D. Conn. Sept. 25, 2020) (hereinafter "JPMorgan DPA"), https://www.justice.gov/opa/press-release/file/1320576/download.

[9] JPMorgan DPA, Attachment A, at ¶¶ 7-17.

[10] JPMorgan DPA ¶ 4(f).

traders who were members of a trading team that placed thousands of index futures contracts orders with the intent to cancel them before execution.[11]

- The Deutsche Bank DPA (which also involved significant FCPA violations) included a discount of 25 percent off the middle of the otherwise-applicable Sentencing Guidelines fine range. The resolution related to a commodities fraud scheme involving multiple traders sitting in three different countries who placed fraudulent orders on multiple exchanges.[12] Nevertheless, the bank received full credit for its cooperation with both of the Department's investigations and for its significant remediation.[13]

We are aware of one recent market conduct resolution that did not include any discount off the applicable Sentencing Guidelines fine; however, that case involved conduct much more serious than the conduct described in Glencore's Information. The Bank of Nova Scotia resolution concerned commodities fraud, wire fraud, and attempted price manipulation charges for conduct that spanned over eight years, involving traders located across three continents who attempted to rig precious metals futures prices in the bank's favor by placing thousands of orders that they intended to cancel before execution. The DPA noted that the bank's compliance function possessed information regarding that unlawful trading by at least one trader for at least

---

[11] Deferred Prosecution Agreement ¶ 4(f) & Attachment A at ¶¶ 2-10, *United States v. Tower Research Capital LLC*, No. 19-CR-00819 (S.D. Tex. Nov. 6, 2019), https://www.justice.gov/opa/press-release/file/1215851/download.

[12] Deferred Prosecution Agreement ¶ 4(u) & Attachment A, at ¶¶ 10-15, *United States v. Deutsche Bank Aktiengesellschaft*, No. 20-CR-00584 (E.D.N.Y. Jan. 7, 2021) (hereinafter "Deutsche Bank DPA"), https://www.justice.gov/criminal-fraud/file/1369951/download.

[13] Deutsche Bank DPA ¶¶ 4(b), (c), (l), (m).

11

two and a half years.[14]  Despite their awareness of the trader's practices, the bank failed to address the conduct or prevent further unlawful conduct by this same trader.[15]

The core of this matter involves the trading in a discrete fuel oil product by only one trader and those acting at his direction, with a narrower and much less significant set of similar practices occurring from time to time in the US Gulf Coast.  Glencore Ltd. has no criminal history of prior investigations or enforcement against it for misconduct related to market manipulation and related fraud, and as described above, cooperated with the DOJ and remediated the conduct.

## III.    Restitution Is Not Appropriate

As indicated in the Plea Agreement and at the May 24 hearing, neither Glencore nor the DOJ believe that restitution is appropriate.  At the May 24 plea hearing, Avi Perry, Chief of DOJ's Market Integrity and Major Frauds unit, described two different classes of potential victims.  The first class was PMI, the entity described in the Plea Agreement as Trading Firm A. The second class of victim are those entities that may have had contracts tied to the manipulated benchmarks during the relevant period, which may have gained or lost money as a result of the manipulation.  With respect to PMI, on September 12, 2022, Glencore entered into a confidential settlement agreement with PMI and PEMEX, resolving all disputes arising out of the facts alleged in the Information, including any PEMEX claim to restitution.  As to the second class of potential victims, the Government indicated that it has not been able to identify parties that

---

[14] Deferred Prosecution Agreement ¶ 4(b), *United States v. The Bank of Nova Scotia*, No. 20-CR-00707 (D.N.J. Aug. 19, 2020) (hereinafter "Bank of Nova Scotia DPA"), https://www.justice.gov/opa/press-release/file/1306141/download .

[15] Bank of Nova Scotia DPA  ¶¶ 4(i), 21.

actually were harmed and has not been able to calculate losses that those parties may have suffered from the offense conduct.

On August 30, the Court granted our request to extend the deadline by which any interested party seeking an order of restitution to file briefing explaining the basis for their restitution claim to September 13, the same day this submission is due with the Court.  At the time of filing, Glencore is unaware of any party seeking restitution.  We request the opportunity to supplement this submission, in the event that any party submits an application for restitution.

****

For the reasons set forth above, Glencore respectfully asks the Court to accept the plea agreement and approve the proposed sentence.

Dated: September 13, 2022

Respectfully submitted,

*/s/Christopher Davies*
Christopher Davies (admitted *pro hace vice*)
Howard M. Shapiro (admitted *pro hace vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington DC 20006
christoper.davies@wilmerhale.com
howard.shapiro@wilmerhale.com

Anjan Sahni (admitted *pro hace vice*)
250 S. Greenwich Street
New York, NY 10007
anjan.sahni@wilmerhale.com

Bonnie L. Heiple
60 State St. Boston, MA 02109
bonnie.heiple@wilmerhale.com
*Counsel for Defendant Glencore Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2022, a copy of the foregoing Sentencing Memorandum was filed by ECF.

*/s/ Christopher Davies*