# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                    CRIMINAL NO. 3:22-cr-71 (SVN)

    v.

GLENCORE LTD.                               September 16, 2022

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the United States Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the District of Connecticut, respectfully submits this memorandum in connection with the defendant's upcoming sentencing on September 23, 2022. As set forth below, the United States respectfully requests that the Court accept the guilty plea entered by Glencore Ltd. ("Glencore") on May 24, 2022 under Federal Rule of Criminal Procedure 11(c)(1)(C), and sentence Glencore in accordance with the parties' stipulation in their Plea Agreement (Doc. No. 18).

### Background and Procedural History

The defendant is the U.S. arm of one of the world's largest commodities trading and mining companies, Glencore plc. On May 24, 2022, Glencore pleaded guilty to a one-count Information charging a conspiracy to engage in commodity price manipulation (7 U.S.C. § 13(a)(2)), in violation of 18 U.S.C. § 371. In so doing, Glencore admitted that, between 2011 and 2019, its employees manipulated the price of certain grades of fuel oil in the Port of Los Angeles and the Port of Houston, two of the nation's busiest commercial ports. Glencore unlawfully gained $144,417,203 through its price manipulation scheme.[1] At that time, the Court entered Glencore's guilty plea, and deferred decision as to whether to accept the parties' stipulated sentence under

---

[1] A more fulsome description of the offense conduct is set forth in the Statement of Facts in Attachment A to the parties' Plea Agreement.

Rule 11(c)(1)(C).

On the same day that Glencore pleaded guilty in this Court, Glencore's Swiss-based operational parent company, Glencore International A.G. ("Glencore International"), pleaded guilty in the United States District Court for the Southern District of New York to a conspiracy to violate the Foreign Corrupt Practices Act ("FCPA"). In that case, Glencore International admitted to engaging in a decade-long scheme to pay more than $100 million to third-party intermediaries, a significant portion of which would be used to pay bribes to officials in Nigeria, Cameroon, Ivory Coast, Equatorial Guinea, Brazil, Venezuela, and the Democratic Republic of the Congo. The terms of the FCPA Plea Agreement, which also was entered under Rule 11(c)(1)(C) and is subject to the district court's acceptance, require Glencore International to pay a criminal fine of $428,521,173 and to forfeit $272,185,792. As in the commodities manipulation case before this Court, Glencore International has agreed to the imposition of an independent compliance monitor.

In addition to these two U.S. criminal cases, Glencore International also has been charged by the United Kingdom's Serious Fraud Office and has reached separate parallel resolutions with the Brazilian Ministério Público Federal and the U.S. Commodity Futures Trading Commission ("CFTC"). In total, if these resolutions are accepted by the courts overseeing the various matters, Glencore and Glencore International will pay more than $1.1 billion in combined criminal fines and forfeiture, and each entity will be under a compliance monitorship for three years.

**Application of the Sentencing Guidelines**

As set forth in Paragraph 20 of the Plea Agreement, the parties agree that the following Sentencing Guidelines provisions apply based on the facts of this case for purposes of determining an advisory guideline range, applying the 2018 U.S. Sentencing Guidelines:

a.  <u>Offense Level</u>. Based upon U.S.S.G. § 2B1.1, the total offense level is 34, calculated as follows:

| (a)(1) | Base Offense Level | 6 |
| (b)(1)(N) | Gain of more than $150,000,000 | +26 |
| (b)(10) | Sophisticated Means | +2 |
| **TOTAL** | | **34** |

b.  <u>Base Fine</u>. Based upon U.S.S.G. § 8C2.4(a)(2), the base fine is $179,590,359 (the pecuniary gain to all co-conspirators from the offense[2])

c.  <u>Culpability Score</u>. Based upon U.S.S.G. § 8C2.5, the culpability score is 6, calculated as follows:

| (a) | Base Culpability Score | 5 |
| (b)(3) | The organization has 200 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense | +3 |
| (g)(2) | The organization fully cooperated in the investigation, and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | -2 |
| **TOTAL** | | **6** |

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine (U.S.S.G. § 8C2.4(a)(2)) | $179,590,359 |
| Multipliers (U.S.S.G. § 8C2.6) | 1.20 (min)/2.40 (max) |
| Fine Range (U.S.S.G. § 8C2.7) | $215,508,430 to $431,016,861 |
| Statutory Maximum Fine (18 U.S.C. § 3571(d)) | $359,180,718 |

---

[2] This amount includes $144,417,203 in unlawful gains to Glencore, and $35,173,156 in unlawful gains to the company identified in the Information and Plea Agreement as Trading Firm A, which is alleged to have been a co-conspirator in at least the Joint Venture aspect of the charged conduct.

**Appropriate Disposition**

As set forth in Paragraph 21 of the Plea Agreement, the key terms of the parties' agreement on the appropriate disposition in this matter are as follows:

First, Glencore agreed to a three-year term of probation.

Second, Glencore agreed to a criminal fine of $341,221,682, calculated based on the statutory maximum amount under 18 U.S.C. § 3571(d) (*i.e.*, twice the gross gain to Glencore ($359,180,718)) with a 5% reduction for Glencore's cooperation.

Third, Glencore agreed to criminally forfeit $144,417,203, which represents the full amount of Glencore's unlawful gains from the scheme.

Fourth, Glencore agreed to retain an independent compliance monitor for a three-year term. The monitor's duties, which include assessing and monitoring Glencore's compliance with the terms of the agreement and the enhancement of Glencore's compliance program, are set forth primarily in Attachment D to the Plea Agreement.

Fifth, Glencore agreed to cooperate with government investigations for at least the three-year term of the agreement, and longer if such investigations are not complete.

**Application of the Factors Set Forth in 18 U.S.C. § 3553(a)**

Consideration of the relevant 18 U.S.C. § 3553(a) factors—including the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, and the need for the sentence imposed to reflect the serious of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant—warrant the sentence agreed upon by the parties. As set forth in greater detail at Paragraph 13 of the Plea Agreement, the United States

- 4 -

agreed on the stipulated sentence based on the individual facts and circumstances presented by this case and defendant, including:

a.       the nature and seriousness of the offense conduct that, among other things: involved Glencore's manipulation of two fuel oil benchmark price assessments over a period of years concluding in 2019; occurred in part while Glencore was aware that it was under active investigation for the same conduct by the CFTC beginning in 2015; was undertaken by Glencore fuel oil traders and salespeople with the knowledge and consent of at least one senior executive as of approximately 2015 and of operations and risk management personnel; and artificially impacted the price of fuel oil for cargo ships and other vessels in two of the nation's busiest commercial shipping ports, resulting in substantial unlawful gains to Glencore of approximately $144,417,203, and to all co-conspirators of approximately $179,590,359;

b.       Glencore did not receive voluntary disclosure credit pursuant to the Corporate Enforcement Policy in the Department of Justice Manual ("JM") § 9-47.120, or pursuant to the Sentencing Guidelines, because it did not voluntarily and timely disclose to the United States the conduct described in the attached Statement of Facts;

c.       Glencore received credit for cooperation under U.S.S.G. § 8C2.5(g)(2), because it cooperated with the United States' investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct; Glencore also received partial credit for its cooperation with the United States' investigation pursuant to the Corporate Enforcement Policy, JM § 9-47.120, by, among other things, expeditiously producing voluminous documents to avoid delaying the United States' investigation, producing a limited set of documents from foreign countries in ways that did not implicate

- 5 -

foreign data privacy law prohibitions, and engaging a data consulting firm to analyze trading activity and present that analysis to the United States; in addition, Glencore also provided to the United States all relevant facts known to it;

  d.  Glencore did not receive full credit pursuant to the Corporate Enforcement Policy, JM § 9-47.120, for its cooperation because it presented its data analysis only after the United States' investigation was substantially complete, did not otherwise make regular and detailed factual presentations to the United States, and did not proactively identify any important information or documents for the United States, or for its remediation because Glencore did not take adequate disciplinary measures with respect to certain senior personnel and other employees involved in, or aware of, the conduct described in the Statement of Facts;

  e.  Glencore had an inadequate and ineffective compliance program and internal controls during the period of the conduct described in the Plea Agreement's Statement of Facts, including the absence of an electronic trade surveillance program; however, Glencore has enhanced its compliance program by, among other things, increasing its annual compliance operating budget and adding more than 45 full-time equivalent compliance positions, hiring and promoting compliance personnel with the necessary experience and skills, improving its compliance technology infrastructure, improving its anti-manipulation training and policies, developing an electronic trade surveillance program, and undertaking regular, periodic risk assessments;

  f.  Glencore has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to the Plea Agreement;

g.      based on the state of Glencore's compliance program and the progress of its remediation, including the fact that certain of Glencore's remedial improvements to its compliance program and internal market controls have not been fully implemented or tested to demonstrate that they would prevent and detect similar misconduct in the future, the United States determined that an independent compliance monitor was necessary; and

h.      Glencore has no prior criminal history and only a limited history of regulatory enforcement action.

The United States respectfully submits that the agreed-upon sentence is appropriate and sufficient, but not greater than necessary, in light of consideration of the facts and relevant § 3553 factors in this case. Glencore's crime was serious. Conspiring to manipulate the price of fuel oil at two of the nation's busiest ports by creating the false appearance of supply and demand undermines confidence in our commodity markets and can ripple through the economy. Accordingly, the agreed-upon sentence is sufficient to promote respect for the law, provide just punishment for the offense, and deter those like Glencore who conspire to manipulate commodity prices and undermine the integrity of the nation's commodity markets.

**Restitution**

The United States and Glencore agreed in Paragraph 21(e) of the Plea Agreement that the amount of loss resulting from the offense cannot   reasonably be determined, and thus the parties believe there is no basis for an order of restitution.

Based on the information presently available to the United States, it continues to appear that restitution is not appropriate because any potential victim losses (1) have been otherwise resolved or (2) are not reasonably calculable and would unduly prolong and complicate sentencing in this matter. *See* 18 U.S.C. § 3663. The United States is aware of two categories of potential

victims, the first of which has settled its claims with Glencore. As to the second category, the United States (and the Court) lack information necessary to assess and calculate restitution.

First, as the Court is aware, P.M.I. Trading DAC (together with its predecessor P.M.I. Trading Ltd., "PMI") (identified in the Plea Agreement Statement of Facts as Trading Firm A) and Petróleos Mexicanos ("PEMEX") (identified in the Statement of Facts as National Oil Company A) appeared in this matter on June 17, 2022, asserting that they consider themselves victims entitled to restitution. The Court need not determine the merits of their claims, however, because PMI, PEMEX, and Glencore recently reached a negotiated resolution of PMI and PEMEX's restitution claims. *See* Notice (Sept. 12, 2022) (Doc. No. 58). Any alleged losses thus are being addressed outside the context of this criminal proceeding, and there is no basis for a restitution order to PMI or PEMEX.

Second, as flagged for the Court previously, it would be exceeding difficult to identify other persons or entities harmed by Glencore's manipulation, much less perform the corresponding calculation of losses. The potential universe of such victims could include anyone active in either of the fuel oil markets at issue at any point during the multi-year conspiracy, and the calculation of their potential losses would be a fact- and data-intensive exercise for each separate claimant. In any event, no such claimants have identified themselves to the United States either in connection with this matter or in connection with a related criminal case filed in early 2021, *United States v. Emilio Heredia*, 3:21-cr-00109 (N.D. Cal.). Thus, there is no basis for restitution to any other parties.

**Conclusion**

For the foregoing reasons, the Court should sentence Glencore in accordance with the terms set forth in the Rule 11(c)(1)(C) Plea Agreement reached by the parties, which includes a three-year term of probation, a criminal fine of $341,221,682, forfeiture of $144,417,203, and a special assessment of $400.

Date:   September 16, 2022

Respectfully submitted,

GLENN LEON                                    VANESSA ROBERTS AVERY
Chief, Fraud Section                          United States Attorney
Criminal Division                             District of Connecticut
U.S. Department of Justice


By: ___/s/_____                    By: ___/s/_____
Avi Perry, Deputy Chief                       Jonathan N. Francis
Matthew F. Sullivan, Trial Attorney           Assistant United States Attorney
John J. Liolos, Trial Attorney                Federal Bar No. phv05083
                                              jonathan.francis@usdoj.gov
                                              157 Church Street, 25th Floor
                                              New Haven, CT 06510
                                              Tel.: (203) 821-3700

- 9 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2022 a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing

system. Parties may access this filing through the Court's CM/ECF System.


_____/s/_____
Jonathan N. Francis
Assistant United States Attorney